# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JOSE RUIZ-ZARAGOZA,

    Plaintiff,

v.                                          Case No. 8:19-cv-255-CEH-UAM

MATTHEW KRUSE,

    Defendant.
_____/

## ORDER

Before the Court are Defendant's Motion for Summary Judgment (Doc. 54), and Plaintiff's opposition (Doc. 56). Based on the present record and with the benefit of oral argument at the July 13, 2023 hearing (*see* Doc. 66), the Motion for Summary Judgment will be granted.

    I. Factual Background[1]

Plaintiff is a federal prisoner. Defendant Kruse is a DEA Special Agent. On April 15, 2015, Plaintiff was asleep in his home when he heard a knock on his door (Doc. 1-1,

---

[1] In considering the Motion for Summary Judgment, the factual background is derived from the sworn complaint, Plaintiff's affidavit, and other evidence submitted by Plaintiff and Defendant in support of, or in opposition to, the motion for summary judgment. For the purposes of ruling on Defendant's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) (in deciding a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor).

1

"Attachment A"; Doc. 56-2, "Affidavit of Jose Ruiz-Zaragoza"). When he opened the door, an agent ordered him to turn around (*Id.*). After he turned around, he was thrown to the ground and handcuffed (*Id.*). Defendant Kruse ordered Plaintiff to stand but he could not do so because he was lying on his stomach and handcuffed (*Id.*). Defendant Kruse grabbed the handcuffs and lifted Plaintiff off the ground to his feet (*Id.*).

Plaintiff was transported to Polk County Jail ("PCJ") (Doc. 54-1, "Exhibit A"). The "Polk County Sheriff's Office Department of Detention Arresting/Transporting Officer Information Sheet" indicated Plaintiff had no injuries (*Id.*). Plaintiff received an initial medical and mental health screening at PCJ (Doc. 54-1, "Exhibit B). The "Polk County Jail Receiving Screening/Physical" form indicated Plaintiff had no medical problem such as bleeding or injuries that required immediate medical attention, that he denied any bruising or pain, and that he did not need a referral for any medical care (*Id.*).

On April 17, 2015, Plaintiff submitted a Health Services Request Form at PCJ which stated, "my right middle finger was stepped on and hurts real [sic] bad" (Doc. 54-1, "Exhibit C"). A "Nursing Encounter Tool" form indicated Plaintiff was seen by a nurse on April 24, 2015, complaining of a "swollen" left middle finger (Doc. 54-1, "Exhibit D"). The nurse gave Plaintiff Tylenol and referred him to a physician. (*Id.*). The referral reflects that Plaintiff "stated [his middle finger] was stepped on by deputy when he was arrested." (Doc. 54-1, "Exhibit E").

On May 1, 2015, Plaintiff was seen by a physician at PCJ for his swollen middle finger

(Doc. 54-1, "Exhibit F"). The physician's "Progress Note" form indicated that Plaintiff stated, "I got it broke during arrest on 4/15/15." (*Id.*). The physician instructed Plaintiff to take "NSAIDs" and referred him for an x-ray (*Id.*). The x-ray was taken on May 4, 2015 (Doc. 54-1, "Exhibit G"). The Radiology Report indicated that the reason for the x-ray was "trauma injury during arrest," and Plaintiff had an "intra-articular fracture of the proximal aspect of the distal phalanx of the long finger." (*Id.*).

According to Plaintiff, approximately 45 days later he was "taken to an outside hospital in Lakeland, FL." (Doc. 56-1, "Exhibit 1" – Plaintiff's answers to interrogatories). There, he was seen by a doctor and x-rays were taken (*Id.*). The doctor confirmed Plaintiff's fingers were broken and tendons damaged and made an appointment for Plaintiff to see a specialist (*Id.*).[2] Plaintiff was returned to PCJ (*Id.*). However, when Plaintiff returned to the hospital three months later, he saw the same doctor rather than a specialist because a specialist was not available (*Id.*). One month later Plaintiff was taken to "the Winter Haven Hospital" where he saw a doctor and had another x-ray (*Id.*). The doctor said Plaintiff's fingers were broken and he had tendon damage, and they would schedule surgery (*Id.*). Plaintiff returned to PCJ and never had surgery (*Id.*).

---

[2] Plaintiff's statement that the doctor confirmed his fingers were broken and tendons damaged is hearsay. "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation and internal quotations omitted). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial. . . ." *Id.*, at 1323 (citation and internal quotations omitted). The doctor could testify to these facts at trial. Accordingly, the Court will consider the statement.

Counsel for Defendant Kruse requested Plaintiff's medical records from Lakeland Regional Hospital and Winter Haven Hospital but neither hospital could locate a record of Plaintiff (Doc. 54-1, "Exhibit H"). Plaintiff attests that he does not know and has never been provided with the names of the hospitals he was transported to in Lakeland and Winter Haven (Doc. 56-2, "Exhibit 2" – Plaintiff's affidavit). Defendant Kruse asserts none of Plaintiff's medical records show Plaintiff was referred to a hospital or that surgery on his hand was contemplated (Doc. 54 at 4).

After Plaintiff was transferred to Suwanee Correctional Institution ("SCI") in 2017, he received an x-ray of his left hand and left forearm (Doc. 54-1, "Exhibit I"). The October 9, 2018 Radiology Report stated there was no evidence of "acute disease" in either the hand or forearm (*Id.*). Plaintiff states that while he was at SCI, he was seen by a Nurse Corbin who examined Plaintiff, took x-rays, and told Plaintiff his fingers were broken and tendons damaged (Doc. 56-1, "Exhibit 1").

II. Procedural Background

Plaintiff filed his civil rights complaint against Defendant Kruse in January 2019 (Doc. 1). Plaintiff contends Defendant Kruse used excessive force during his arrest in violation of his rights under the Fourth Amendment to the United States Constitution (*Id.* at 3). As relief, Plaintiff seeks $200,000.00 in monetary damages (*Id.* at 5).

Defendant Kruse moved to dismiss the complaint on July 13, 2020 (Doc. 18). After Plaintiff responded (Doc. 23), the motion to dismiss was granted to the extent the complaint

4

alleged an Eighth Amendment violation but was otherwise denied (Doc. 25). After Defendant Kruse answered the complaint (Doc. 26), and the deadlines for discovery and dispositive motions were set (Doc. 27), the action was dismissed without prejudice on May 4, 2021, because Plaintiff failed to notify the Court he had changed his address of record (Doc. 30). However, Plaintiff's motion to reopen the case (Doc. 34) was granted on October 14, 2021 (Doc. 38).

After the deadline for discovery expired, Defendant Kruse moved for summary judgment on July 8, 2022 (Doc. 54). Plaintiff filed his response opposing the motion on August 3, 2022 (Doc. 56). A hearing on the motion was held on July 13, 2023 (Doc. 66).

III. Legal Standards

Defendant Kruse moves for summary judgment. "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Jean Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010) (citing Fed.R.Civ.P., Rule 56). At this stage of the proceedings, "the evidence and all reasonable inferences from that evidence are viewed in the light most favorable to the nonmovant, but those inferences are drawn 'only to the extent supportable by the record.'" *Id*. (quoting *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010)). The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is stringent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

5

Rule 56(c)(1) provides:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must offer affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P., Rule 56(c)(4). If, after the movant makes its showing, the nonmoving party brings forth evidence supporting its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 50 (citations omitted).

6

IV. Discussion

Plaintiff contends Defendant Kruse used excessive force during his arrest in violation of the Fourth Amendment. Defendant Kruse argues summary judgment is appropriate because he is entitled to qualified immunity from Plaintiff's Fourth Amendment claim (Doc. 54 at 5-13). "To establish the defense of qualified immunity, the burden is first on [the public official] to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). A government official acts within his or her discretionary authority "if the actions were (1) undertaken pursuant to the performance of [his or her] duties and (2) within the scope of [his or her] authority." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (internal quotation marks and alterations omitted). In applying this test, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert*, 157 F.3d at 1282 (internal quotation marks omitted).

If a defendant establishes that he or she acted within discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Brooks v. Warden*, 800 F.3d 1295, 1306 (11th Cir. 2015). The plaintiff must "satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Gilmore v. Hodges*, 738 F.3d 266, 267 (11th Cir. 2013)

(citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

A court must "resolve all issues of material fact in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017) (internal quotation marks omitted). With the facts construed in this manner, the Court "ha[s] the plaintiff's best case" and "material issues of disputed fact are not a factor in the court's analysis of qualified immunity and cannot foreclose the grant or denial of summary judgment based on qualified immunity." *Id*. (internal quotation marks omitted).

### A. Discretionary authority

The parties do not dispute that Defendant Kruse entered Plaintiff's residence and arrested Plaintiff. The parties also do not dispute that Plaintiff was placed on the floor on his stomach, handcuffed, then lifted by the handcuffs off the ground by Defendant Kruse. Thus, Defendant Kruse was acting within his discretionary authority as a law enforcement agent. *See Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) ("Here, because Suszczynski was attempting to arrest or restrain Arango, Suszczynski was 'clearly engaged in a discretionary capacity,' which means immunity could attach to his actions."). Indeed, Plaintiff concedes Defendant Kruse acted in his discretionary authority (Doc. 56 at 3). Consequently, Plaintiff must show that Defendant Kruse violated a constitutional right that was clearly established at the time.

B. Violation of a clearly established constitutional right

Using excessive force in making an arrest violates the Fourth Amendment. *See Davis v. Williams*, 451 F.3d 759, 767 (11th Cir.2006). Whether the force used was excessive or reasonable is determined objectively "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight" and requires "careful attention to the facts and circumstances of each particular case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir.2000) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The factors to be analyzed include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Priester*, 208 F.3d at 924; *Mercado v. City of Orlando*, 407 F.3d 1152, 1157 (11th Cir.2005). The totality of the circumstances is considered "to determine whether the manner of arrest was reasonable." *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir.2004). "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." *Id*. at 1277–78 (quotation omitted). The force exerted by the officer must be "reasonably proportionate to the need for that force" which is measured by the three factors in *Priester*. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

Considering the first factor, the facts and reasonable inferences viewed in the light most favorable to Plaintiff establish the need for some force. According to Plaintiff, he could not

stand up because he was lying on his stomach on the floor and handcuffed. Thus, some force was needed to assist Plaintiff in rising to his feet.

The second factor, the relationship between the need for force and the amount of force used, weighs in favor of finding a constitutional violation. There is no evidence Plaintiff was resisting arrest or refusing the order to stand. Therefore, only the force necessary to assist Plaintiff to his feet was reasonable. Defendant Kruse's act of lifting Plaintiff off the floor by the handcuffs with force sufficient to tear tendons and break bones was disproportionate to the need for force. *See, e.g., Solovy v. Morabito*, 375 F. App'x. 521, 527 (6th Cir. 2010) ("The method Sergeant Carroll used to lift Solovy—pulling the chains of handcuffs secured behind Solovy's back to hoist his body weight—was almost guaranteed to cause substantial pain, especially to a person with a shoulder injury. Further, nothing suggests that this was a necessary or even an appropriate way to lift Solovy. Thus, lifting Solovy from the ground using his handcuff chains would be plainly unreasonable."); *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) ("[A]n officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury."); *Blazek v. City of Iowa City*, 761 F.3d 920, 926 (8th Cir. 2014) ("If Blazek can prove at trial that he was subdued and compliant, but that the officers grabbed him by the arms and gratuitously "jerked" him from the floor onto the bed, using enough violent force to cause significant injury, then we agree with the district court that a reasonable jury could find a violation of the Fourth Amendment.").

Regarding the third factor about resulting injury, the facts taken in the light most favorable to the Plaintiff show he suffered significant injury from the alleged use of force. *See, e.g., Walker v. Givens*, 2022 WL 4395452, at *6 (N.D. Ala. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4391504 (N.D. Ala. Sept. 22, 2022) (assuming, for purposes of summary judgment, "that force resulting in a bone fracture to tip of finger" and requiring "minimal treatment" was "sufficiently serious to violate the Eighth Amendment"). Thus, under the totality of the circumstances, a reasonable jury could find Defendant Kruse's use of force was unreasonable.

Defendant Kruse argues there was no violation of the Fourth Amendment because no excessive force was used during the arrest (Doc. 54 at 8-13). Specifically, Defendant Kruse argues Plaintiff's contention he yanked Plaintiff up off the floor by the handcuffs and caused Plaintiff's injuries in the process is belied by Plaintiff's medical records (*Id*. at 10-11). In support, Defendant Kruse asserts the medical records show: (1) Plaintiff told no medical provider he was injured when he was "yanked" off the floor by the handcuffs; (2) Plaintiff had no injuries or medical concerns during his initial medical screening; (3) two days after the arrest Plaintiff complained his middle finger hurt because it was "stepped on"; (4) nine days after his arrest he alleged a deputy stepped on his finger during the arrest; and (5) Plaintiff sustained only a fracture of his fingertip, not two broken fingers and tendon damage (*Id*.).

If Plaintiff's medical records were unchallenged, Plaintiff's allegations about how he

11

was injured would be implausible. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff, however, alleges in both his complaint and affidavit he sustained his injuries when he was lifted off the floor by the handcuffs (Doc. 1-1, "Attachment A"; Doc. 56-2, "Affidavit of Jose Ruiz-Zaragoza", ¶ 7). Defendant Kruse presents no evidence showing this was not the manner by which Plaintiff was lifted off the floor. Also, Plaintiff attests that he has always maintained he sustained the injuries during his arrest and suggests some of the medical records may not include that information because he does not speak English (Doc. 56-2, "Affidavit of Jose Ruiz-Zaragoza", ¶ 10). And some records indicate Plaintiff was injured during the arrest (Doc. 54-1, "Exhibit G").

To the extent Defendant Kruse argues the medical records reveal Plaintiff sustained only one broken finger, Plaintiff maintains doctors at hospitals in Lakeland and Winter Haven stated he had two broken fingers and tendon damage, and he does not know the name of the hospital to which he was taken in each city (Doc. 56-1, "Plaintiff's Response to Defendant's First Set of Interrogatories"). And even if Plaintiff sustained only one broken finger, that itself does not establish excessive force was not used. *See Lee v. Ferraro*, 284 F.3d at 1200 ("[O]bjectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical

harm.").

Considering the medical records with Plaintiff's sworn statements and answers to interrogatories and weighing the evidence and factual inferences in the light most favorable to Plaintiff, the Court cannot conclude that no excessive force was used against Plaintiff. "[T]he medical records here are not the same as the 'incontrovertible' video evidence that courts must accept over contradictory sworn statements, since those records involve people and all their attendant mental infirmities, biases, and limitations-in their creation." *Sears v. Warden Okeechobee Corr. Inst.*, 762 F. App'x. 910, 917 (11th Cir. 2019). A reasonable fact-finder could find that Defendant Kruse used excessive force against Plaintiff, and caused his injuries, by lifting him off the floor by the handcuffs. The self-serving nature of Plaintiff's sworn statements do not preclude those statements from creating a genuine dispute of material fact, and there is no uncontroverted objective evidence rendering his version of the events implausible. *See Sears*, 762 F. App'x. at 917. Thus, at this stage of the proceedings, Plaintiff has met his burden to show Defendant Kruse's use of force was unreasonable and therefore violated his rights under the Fourth Amendment.

Defendant Kruse argues that even if the force used was excessive, the law was not clearly established (Doc. 54 at 11). Under the facts of this case, the Court agrees.

In *Hadley v. Gutierrez*, the Eleventh Circuit confirmed that "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002." 526 F.3d 1324, 1333 (11th Cir. 2008). However, analyzing a claim of excessive force requires

13

"careful attention to the facts and circumstances of each particular case." *Priester*, 208 F.3d at 924. Here, the force at issue was Defendant Kruse lifting Plaintiff from the ground to his feet by the handcuffs. The Court has found no controlling caselaw[3] at the time of Plaintiff's arrest establishing that an officer lifting a restrained arrestee off the ground by the handcuffs to get him up on his feet is, itself, excessive force. *See Smith v. Mattox*, 127 F.3d at 1419 (". . .[U]nless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw."). And the Court cannot say that under the circumstances, Defendant Kruse's act of lifting Plaintiff up from the ground by the handcuffs was "so obviously contrary to constitutional norms" that qualified immunity does not apply. *Skrtich v. Thornton*, 280 F.3d 1295, 1305 n. 9 (11th Cir.2002).

The Court notes that in the cases it has reviewed in which the courts found lifting a suspect off the ground to his feet by the handcuffs was excessive force, additional factors contributed to the courts' conclusions that the officers were not entitled to qualified

---

[3] For purposes of qualified immunity in this District, only decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court constitute "clearly established" law. *See McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("We have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law.").

immunity. *See, e.g., Solovy*, 375 F. App'x. at 527 (lifting arrestee off ground by handcuffs after arrestee informed officers he had a "bad locked shoulder"); *Trimble v. Parisek*, 2013 WL 5449571, at *4 (E.D. Mich. Sept. 30, 2013) (officer threw handcuffed arrestee to the ground face-first, picked him up by his handcuffs causing his hand to snap, and refused arrestee's numerous requests for medical attention). *See also Bailey v. Ramos*, 2023 WL 2147700, at *16 (W.D. Tex. Feb. 17, 2023) (". . .Plaintiff fails to cite, and the Court has not identified, any cases indicating that lifting a suspect by his handcuffs constitutes excessive force."). Here, Plaintiff makes no allegation other than Defendant Kruse used the handcuffs to lift him from the ground to his feet.

Considering Plaintiff alleges only that he was lifted up by his handcuffs, this Court cannot conclude Defendant Kruse violated a constitutional right that was clearly established. Plaintiff has not provided, and this Court has not found, a controlling case involving similar facts that would have given Defendant Kruse fair warning that his conduct was unconstitutional. Therefore, Defendant Kruse is entitled to qualified immunity.

Accordingly, the Motion for Summary Judgment (Doc. 54) is **GRANTED**. The Clerk is directed to enter judgment against Plaintiff and close this case.

**ORDERED** in Tampa, Florida, on April 12, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Plaintiff, *pro se*